UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FRANKFORD CROSSING SHOPPING CENTER
DALLAS, TX. LIMITED PARTNERSHIP

           Plaintiff,

                     DECISION AND ORDER

                     12-CV-6424L

       v.

PHO PARTNERS, LLC, et al.,


           Defendants.
_____

  This action arises out of a landlord-tenant dispute in connection with a shopping mall in Dallas, Texas. While a court in Rochester, New York might seem an unlikely place to hear a dispute concerning property in Texas, it is well established that "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). The parties to this action have done so, and have contractually agreed that any disputes between them arising out of their lease are to be heard in New York State.

  Two motions are currently pending before the Court. Defendants Pho Partners, LLC, Smooth Sailing, LP, and Phillip Silva have moved to dismiss the action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative to transfer venue to Texas. Plaintiff, Frankford Crossing Shopping Center Dallas ("Frankford"), has moved to remand this action to the New York state court in which it was originally brought.

# BACKGROUND[1]

Frankford is a limited partnership organized under the laws of Delaware, with its principal place of business in Rochester, New York. Frankford owns a shopping center, Frankford Crossing, in Dallas, Texas.

In March 2007, Frankford, as the owner/landlord, entered into a lease agreement with a tenant, Aquaesque, Inc., for premises in the shopping center. Silva signed the lease as Aquaesque's president. *See* Dkt. #11-2 Ex. A. In addition, Silva executed a separate lease guaranty ("Guaranty"), in his individual capacity, guaranteeing Aquaesque's performance under the lease. *See* Dkt. #11-2 Ex. B.

Of particular importance here are two provisions, one in the lease, one in the Guaranty. The lease provides, at § 22.03:

> Owner and Tenant agree that any controversy between them, pursuant to the Lease or otherwise, must be determined in the state, county or city courts in which Owner's principal office is located and Tenant specifically agrees to the jurisdiction of the state in which Owner's principal office is located that the laws of such state shall apply to any proceeding [sic].

Dkt. #11-2 at 13.

The Guaranty, in turn, provides in relevant part, "that the Guarantor [*i.e.*, Silva], guarantees, unconditionally and absolutely, the full and faithful performance and observance of all the covenants, terms, and conditions of the Lease provided, to be performed and observed by Tenant, expressly including, without being limited to, the payment, when due, of [rent] ... ." Dkt. #11-2 at 19.

---

[1] The facts here are largely taken from a recent Report and Recommendation by Magistrate Judge Irma Carrillo Ramirez of the Northern District of Texas, *Silva v. Frankford Crossing Shopping Center, TX, LP*, No. 12-CV-2046, 2013 WL 1264155 (N.D.Tex. Feb. 22, 2013), *Report and Recommendation adopted*, 2013 WL 1281571 (N.D.Tex. Mar. 28, 2013). That case–which will be discussed later in this Decision and Order–involves these same parties and the same dispute, and the parties here do not appear to dispute the facts as set forth by Magistrate Judge Ramirez.

In August 2007, defendant Smooth Sailing, LP was substituted as tenant in place of Aquaesque. Silva signed the written substitution agreement as president of Smooth Sailing. Dkt. #11-2 Ex. C. That document stated in part that except for that substitution, "the Lease shall remain unmodified and in full force and effect." *Id.* at 1.

At some point, a dispute arose between Silva and Frankford involving Smooth Sailing's performance and rights under the lease, and Silva filed a lawsuit against Frankford in federal court in Dallas. In July 2010, Silva, Smooth Sailing and Frankford entered into an amendment to both the lease and the Guaranty, settling that lawsuit. The amendment provided, *inter alia*, that Silva agreed to guarantee certain payments by Smooth Sailing, adding that "[a]ll provisions of the Guaranty not amended hereby are hereby ratified and affirmed by the Tenant and Owner." Dkt. #11-2 Ex. D, ¶ 3.

In February 2011, Smooth Sailing assigned its interest in the lease to defendant Pho Partners, LLC ("Pho"). *See* Dkt. #11-2 Ex. E. Silva executed the assignment on behalf of both Smooth Sailing (in his capacity as its owner) and Pho (as its manager), and in his individual capacity as guarantor. The assignment stated, *inter alia*, that "[a]ll provisions of the Lease and Guaranty not amended hereby are hereby ratified and affirmed by Owner, Tenant and Guarantor." *Id.* at 1.

On May 29, 2012, Pho gave notice to Frankford of its intent to vacate the leased premises. Simultaneously, Silva offered to pay Frankford $119,067.48 in full satisfaction of any claim that Frankford might have against him pursuant to the Guaranty. Apparently Frankford did not accept that offer.

The following day, May 30, 2012, Silva sued Frankford in Texas state court, seeking a declaratory judgment that neither Aquaesque, Smooth Sailing, nor Pho had committed a material default of the lease, that Silva's liability under the Guaranty was limited to the sum of $119,067.48, and that he was entitled to a rebate for any benefit gained by Frankford as a result of its mitigation of damages and re-leasing of the premises.

The next month, on June 4, 2012, Frankford sued Silva, Smooth Sailing and Pho in New York State Supreme Court, Monroe County, asserting claims for breach of the lease agreement, and seeking $850,000 in damages.

Both the Texas and New York state court actions were removed to federal court. Frankford removed the Texas state court action to the United States District Court for the Northern District of Texas on June 27, 2012, based on diversity of citizenship. Frankford then moved to dismiss the action for improper venue under 28 U.S.C. § 1406, or in the alternative either to transfer venue to this Court, or to abstain from hearing the case in favor of the pending state court action in New York.

Defendants in the case at bar removed this action to this Court on August 9, 2012. Defendants then moved to dismiss the action for lack of personal jurisdiction, or in the alternative to transfer venue to the Northern District of Texas. Frankford has cross-moved to remand this action to New York state court.

On February 22, 2013, United States Magistrate Judge Irma Carrillo Ramirez issued a Report and Recommendation in the Texas action, recommending that Frankford's motion to dismiss be granted. 2013 WL 1264155. Magistrate Judge Ramirez held that the forum selection clause in the lease was mandatory, valid and enforceable, that it was incorporated by reference into the Guaranty, that Silva was bound by the forum selection clause, and that "the only proper remedy is dismissal pursuant to Rule 12(b)(3)." *Id.* at *4-*6. That Report and Recommendation was adopted by the District Court (O'Connor, J.) on March 28, 2013. 2013 WL 1281571.

**DISCUSSION**

**I. Defendants' Motion to Dismiss or to Transfer**

Insofar as it seeks a transfer of this action to the Northern District of Texas, defendants' motion has been rendered moot by the Texas federal court's dismissal of Silva's action in that court. In that respect, then, defendants' motion is denied.

In support of their motion to dismiss, defendants devote considerable space in their papers to arguing why defendants have not done or transacted business in New York, for purposes of §§ 301 and 302 of New York's Civil Practice Law and Rules. Frankford, however, does not base jurisdiction here on New York's "doing business" or "transaction of business" tests, but on defendants' consent to jurisdiction in New York, by virtue of the forum selection clause in the lease agreement.

As stated, "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair*, 462 F.3d at 103 (citing *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964)). In this Circuit, in fact, "[t]here is a strong presumption in favor of upholding the enforceability of forum selection clauses." *Leviton Mfg. Co., Inc. v. Reeve*, ___ F.Supp.2d ___, 2013 WL 504020, at *7 (E.D.N.Y. Feb. 7, 2013). *See also Bluefire Wireless, Inc. v. Cloud9 Mobile Comm'ns, Ltd.*, No. 09 Civ. 7268, 2009 WL 4907060, at *3 (S.D.N.Y. Dec.21, 2009) ("[t]he Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring their use") (citations omitted); *In re Refco Inc., Secs. Litig.*, No. 08 Civ. 3086, 2009 WL 5548666, at *5 (S.D.N.Y. Nov. 16, 2009) ("Both the Supreme Court and the Second Circuit have recognized that forum selection clauses have economic value and should be enforced in accordance with the expectations of the parties") (citing cases).

"While forum-selection clauses are regularly enforced," however, "several conditions must be met. A court must first determine that the existence of the clause was reasonably communicated to the parties." *D.H. Blair*, 462 F.3d at 103. "Second, a forum-selection clause will be upheld unless 'the clause was obtained through fraud or overreaching.'" *Id.* (quoting *Jones v. Weibrecht*, 901 F.2d 17, 18 (2d Cir. 1990) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). "Finally, unless it is clearly shown that 'enforcement would be unreasonable and unjust,' forum-selection clauses will be enforced." *Id.* (quoting *The Bremen*, 407 U.S. at 15). In addition, the party seeking enforcement of a forum selection clause must show that the clause is mandatory and not merely permissive, and that the claims and parties involved in the suit come within the scope of the forum

selection clause. *Tropp v. Corporation of Lloyd's*, 385 Fed. Appx. 36, 37 (2d Cir. 2010), *cert. denied*, 131 S.Ct. 3064 (2011).

In the case at bar, defendants do not appear to dispute that the forum selection clause is couched in mandatory language, or that it covers the subject matter of this dispute. They argue, however, that "the forum-selection provision does not refer specifically to the State of New York," and that "the provision is buried in the fine print of a lengthy document." Def. Mem. of Law (Dkt. #7) at 7.

The lease clearly states, however, at the top of its first page, that Frankford has "its principal office at 270 Commerce Drive, Rochester, New York 14623." Dkt. #11-2 at 5. Thus, a person who read the entire contract would understand that the forum selection clause's reference to the courts where "Owner's principal office is located," and "the jurisdiction of the state in which Owner's principal office is located" refers to New York.

Defendants' contention that the forum selection clause is "buried in the fine print" is also unpersuasive. Though not highlighted, the clause is no less prominent than most of the other terms of the document. Silva, who has submitted a sworn declaration in connection with the pending motions, Dkt. #8, does not contend that he did *not* read the forum selection provision or that he was confused about its meaning.

Moreover, "it is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound." *Horvath v. Banco Comercial Portugues, S.A.*, No. 10 CIV. 4697, 2011 WL 666410, at *4 (S.D.N.Y. Feb. 15, 2011), *aff'd*, 461 Fed.Appx. 61 (2d Cir. 2012). *See also Weingard v. Telepathy, Inc.*, No. 05 Civ.2024, 2005 WL 2990645, at *4 (S.D.N.Y. Nov. 7, 2005) ("[The signatory] is bound by the terms of the forum selection clause even if he did not take the time to read it because a signatory to a contract is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed") (internal quote omitted).

In fact, in another case involving a different tenant at this same shopping mall, and interpreting virtually identical language in a lease and guaranty, this Court rejected an argument by the commercial tenant's owner that "at no time did [he] ever understand [that by signing the guaranty he would] be forced to bring any claims related to this Guaranty, exclusively in the State of New York." *Preston Frankford Shopping Center Dallas, Tx. Ltd. Partnership v. Butler Dining Services, LLC*, 757 F.Supp.2d 248, 250 (W.D.N.Y. 2010). Noting the presumption that the owner read and understood the terms of those documents before he signed them, the Court stated that his "conclusory allegation that Preston [Frankford] somehow concealed the forum selection clause is completely lacking in support ... ." *Id.* at 252. The same reasoning applies here.

Silva also contends that he is not bound by the forum selection clause because (1) the Guaranty does not contain a forum selection clause, and (2) he is protected by the "fiduciary shield" doctrine, which holds that "an individual should not be subject to jurisdiction if his dealings in the forum State were solely in a corporate capacity." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 40, 467-68 (1988). Silva neglects to mention, however, that the New York Court of Appeals has expressly rejected that doctrine. *See id.* at 468; *Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988); *Vorcom Internet Services, Inc. v. L & H Engineering & Design LLC*, No. 12 CV 2049, 2013 WL 335717, at *2 (S.D.N.Y. Jan. 9, 2013) (noting that "more than twenty years ago the Court of Appeals clearly held that the fiduciary shield doctrine is not applicable in New York"); *MTV Networks v. Program Partners, Inc.*, No. 10 Civ. 0370, 2011 WL 2161800, at *1 (S.D.N.Y. May 25, 2011).

In addition, numerous courts have held that an individual guarantor can be bound by a forum selection clause in the underlying contract, where the guaranty is broadly worded, is executed contemporaneously with the contract, and covers the same subject matter as the contract. *See Quebecor World (USA), Inc. v. Harsha Associates*, 455 F.Supp.2d 236, 239-40 (W.D.N.Y. 2006) (collecting cases). Only when such a "close connection" between the guaranty and the underlying contract is absent are courts "more reluctant to bind a guarantor under a contract's forum-selection

clause ... ." *Id.* (holding that forum selection clause contained in printing contract did not apply to individual defendant by virtue of his having signed earlier guaranty, since the two contracts were signed two months apart and did not refer to each other).

I conclude, therefore, that the forum selection clause in this case is mandatory, that it covers the subject matter of this dispute, and that it is binding on all the parties to this lawsuit. I also find that defendants have made no showing that "'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (quoting *The Bremen*, 407 U.S. at 15). This Court may therefore properly exercise personal jurisdiction over defendants, and it is unnecessary for the Court to address defendants' other arguments concerning long-arm jurisdiction. *See Leviton Mfg. Co., Inc. v. Reeve*, ___ F.Supp.2d ___, 2013 WL 504020, at *6 (E.D.N.Y. Feb. 7, 2013) ("If the forum selection clause is both valid and applicable, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process") (internal quote omitted).

**II. Plaintiff's Motion to Remand**

Frankford has moved for an order remanding this action to New York State Supreme Court. Frankford contends that the forum selection clause mandates that any action between the parties arising out of the underlying lease agreement can only be heard in a state, county or city court, and does not provide for venue in federal court. Defendants, however, argue that the clause at issue here does not constitute a clear waiver of their right to remove this action to federal court, and therefore that it cannot be held to give rise to such a waiver.

"[I]t is well established that a forum selection clause may act as a waiver of defendant's right to remove an action to federal court." *JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 611 F.Supp.2d 389, 390 (S.D.N.Y. 2009). In general, courts look to the "plain and ordinary meaning" of a forum selection clause to determine whether it amounts to a waiver of the right to remove. *New Jersey v. Merrill Lynch & Co., Inc.,* 640 F.3d 545, 548 (3d Cir. 2011). *See, e.g.*, *Slater v. Energy Services*

*Group Intern., Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011); *Klotz v. Xerox Corp.*, 519 F.Supp.2d 430, 434 (S.D.N.Y. 2007); *HongKong and Shanghai Banking Corp. Ltd. v. Suveyke*, 392 F.Supp.2d 489, 492 (E.D.N.Y. 2005).

There is also authority that to be given effect by the courts, "[a]ny waiver of the right of removal 'must be clear and unequivocal. If the forum selection clause is ambiguous in that it is susceptible of two reasonable meanings, it will be construed against the party who drafted it.'" *JP Morgan Chase Bank*, 611 F.Supp.2d at 390 (quoting *John's Insulation, Inc. v. Siska Constr. Co.*, 671 F.Supp. 289, 294 (S.D.N.Y. 1987)).

That does not mean, however, that a forum selection clause must contain some particular language to constitute a waiver of the right to remove. The question is simply whether, giving the contract its plain, ordinary meaning, it clearly demonstrates an intent by the parties to effectuate a waiver. *See JP Morgan Chase Bank*, 611 F.Supp.2d at 390 (determining waiver issue by looking to whether forum selection clause was ambiguous); *see also Merrill Lynch*, 640 F.3d at 548 (3d Cir. 2011) (stating that the "courts have required that waivers of removal rights be 'clear and unequivocal,' ... have done so in the context of non-contractual, litigation-based waivers or have relied upon such cases," and cautioning that where the parties have entered into a contract containing a forum selection clause, the "clear and unequivocal" standard should not be made "so stringent as to be contrary to the right of parties to contract in advance regarding where they will litigate") (internal quote omitted).

In my view, the forum selection clause in the case at bar is reasonably susceptible of only one meaning, and that is that disputes between the parties arising out of the lease agreement can only be litigated in state court, whether at the state, county or city level. I therefore conclude that defendants have waived their right to remove this action to federal court, and that the action must be remanded to state court.

Again, the forum selection clause provides that "any controversy between [the parties], pursuant to the Lease or otherwise, must be determined in the state, county or city courts in which

Owner's principal office is located ... ."  As stated in the lease agreement, Frankford's principal office is located in Rochester, Monroe County, New York.

Several aspects of this clause are particularly notable.  First, it states that any controversy "must" be determined in the designated courts.  That indicates that *only* those courts that are listed in the clause are proper fora for this dispute.  *See Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011) ("Mandatory forum selection clauses ... require that disputes *must* be brought in the designated forum, to the exclusion of all other fora where jurisdiction may also lie").  *Cf. JP Morgan Chase Bank*, 611 F.Supp.2d at 391-92 (clause stating, "The Borrower hereby irrevocably submits to the jurisdiction of *any* New York state *or* United States federal court sitting in New York City over any action or proceeding arising out of this Note, and the Borrower hereby irrevocably agrees that all claims in respect of such action or proceeding *may* be held and determined in such New York state *or* federal court," did not constitute a clear waiver of borrower's right to remove action filed by bank in New York state court) (emphases added).

Second, the clause does not refer generically to "courts in the state, county or city in which Owner's principal office is located," but to "*the* state, county or city courts" where that office is located.  That distinction may be subtle, but it is nonetheless significant.  It indicates that the limitation expressed is not just geographical, but jurisdictional:  it is not enough that the court be located in the same state, county or city as the owner's principal office, but it must also be a state court, or a county court, or a city court.  Indeed, if this clause were intended only to limit *where* an action could be brought, in a purely geographical sense, then the references to "county" and "city" would be superfluous, since the county and city in which Frankford's office is located are necessarily within the state as well.  *See Creditek LLC v. North General Hosp.*, No. 07 CIV. 9322, 2008 WL 394805, at *2 (S.D.N.Y. Feb. 13, 2008) ("Heeding the presumption against superfluities in New York contract law, the phrase 'New York State courts[ sitting in New York County]' [in a forum selection clause] must be construed to limit proper venue to state, as opposed to federal, courts sitting in New York county in order to give meaning to the words 'New York State'").

Third, the clause states not just that an action must be *brought* in one of the listed courts, but that the controversy must be "determined" in those courts. Since removal to federal court would preclude the action from being determined, *i.e.*, decided, or litigated to a final judgment, in state court, that choice of words likewise suggests that the parties intended to waive their federal removal rights with respect to any action between them arising out of the lease. *Cf. John's Insulation, Inc. v. Siska Constr. Co.*, 671 F.Supp. 289, 294-95 (S.D.N.Y. 1987) (forum selection clause providing that actions "shall be commenced" in state supreme court was ambiguous with respect to whether action commenced in state court could be removed to federal court, and therefore did not act as a waiver of right of removal).

For all these reasons, then, I conclude that the forum selection clause here provides for exclusive jurisdiction in the state, county and city courts of New York State, and that by entering into the lease agreement, defendants waived their right to remove this action to federal court. I also conclude, based on the reasons stated with respect to the personal-jurisdiction issue, that the clause applies to defendant Silva, by virtue of his having signed the Guaranty. Frankford's motion to remand is therefore granted.

## CONCLUSION

Defendants' motion to dismiss or in the alternative to transfer venue (Dkt. #6) is denied.

Plaintiff's motion to remand this action (Dkt. #11) is granted, and the Clerk of the Court is hereby ordered to remand this action to New York State Supreme Court, Monroe County.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      April 29, 2013.